**E-Filed 8/23/10**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EDDIE LEE JACKSON,<br><br>Defendants. | Case No. CR-09-1115 JF<br><br>**ORDER[1] DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT** |

Defendant moves to dismiss the indictment.  The Court has read and considered the moving, responding, and reply papers, Defendant's supplemental memorandum, and the oral argument presented by counsel at the hearing on July 22, 2010.  For the reasons discussed below, the motion will be denied.

## I.  FACTS

The following factual summary consists largely of excerpts from Defendant's motion (Dkt. No. 12) that are not disputed by the Government.

---

[1]  This disposition is not appropriate for publication and may not be cited.

### A.    Jackson's Conviction of a Registrable Sex Offense Under California Law

On July 29, 2003, Defendant was convicted of indecent exposure with prior convictions, in violation of Cal. Penal Code § 314.1.  It appears that he initially was placed on probation for that offense, but that on October 14, 2004, he received a two-year prison sentence following probation violations.  Under California law, § 314.1 is a registrable sex offense. Cal. Penal Code § 290(c).  On April 9, 2006, following his release from custody, Defendant was served with a Sex Offender Registration Form.  *See* Def.'s Mot. Ex. C.  Defendant initialed numerous conditions on the form with respect to his status as a sex offender under California law.  The form identifies Defendant's conviction under § 314.1 as the basis for his required registration.

### B.    The Sex Offender Registration and Notification Act ("SORNA")

On July 27, 2006, Congress enacted the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248.  Title I of that Act, entitled the Sex Offender Registration and Notification Act (SORNA), created a national sex offender registry.  The legislation requires every jurisdiction in the United States to maintain a conforming registry. *See id.* § 16912.  In addition, SORNA delineates how and when a sex offender should register under the Act.  *See id.* § 16913.  Specifically, the statute authorizes the United States Attorney General "to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction." *Id.* § 16913(d).

### C.    Defendant's Arrest on the Instant Charge

In 2007, following the passage of Proposition 83 ("Jessica's Law") in California, Defendant received a notice advising him that he could not live within 2,000 feet of a school. *See* Def.'s Mot. Ex. D (Jessica's Law Notice to Comply).  His prior housing arrangement was determined to be unacceptable because it was too close to a school.  He also was required to wear an electronic monitor, which contained a battery that he was required to charge every morning at 6 a.m. and every night at 6 p.m.  *See* Def.'s Mot. Ex. E (Special Condition Addendum).

On June 6, 2008, Defendant's parole officer received a tamper alert.  *See* Def.'s Mot. Ex. F (GPS Report).  On June 7, 2008, the bracelet's battery stopped working.  *Id*.  In November

2

1   2009, Defendant was arrested in Georgia while attempting to pay a traffic citation at a police

2   station.

3       **D.     The Indictment**

4       The instant federal indictment was filed on November 18, 2009.  The indictment, in its

5   entirety, reads as follows:

6       The Grand Jury charges:

7           Between June 2008 and November 2009, in the Northern District of
            California, and elsewhere, the defendant

8                               EDDIE LEE JACKSON

9
        a person required to register under the Sex Offender Registration and Notification
10      Act, traveled in interstate commerce, and did knowingly fail to register and update
        registration.

11
        All in violation of Title 18, United States Code, Section 2250.
12

13  Dkt. No. 1.  Although the indictment does not specify the conviction for which Defendant

14  allegedly was required to register, discovery indicates that the basis for prosecution is

15  Defendant's conviction under Cal. Pen. Code § 314.1.

16                              **II. DISCUSSION**

17      Defendant moves to dismiss the indictment on the grounds that "(1) the indictment is

18  deficient under the Fifth and Sixth Amendments; (2) SORNA does not apply to indecent

19  exposure convictions; and (3) the interim rule rendering SORNA retroactive was issued in

20  violation of the Administrative Procedures Act."  Def.'s Mot. 4.

21      **A.     Whether the Indictment is Deficient**

22      As it relates to grand juries, the Fifth Amendment provides that "[n]o person shall be held

23  to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a

24  Grand Jury."  U.S. Const. amend. V.  "[A]n indictment is sufficient if it, first, contains the

25  elements of the offense charged and fairly informs a defendant of the charge against which he

26  must defend, and, second, enables him to plead an acquittal or conviction in bar of future

27  prosecutions for the same offense."  *Hamling v. United States*, 418 U.S. 87 (1974).  The Supreme

28                                      3

Court recently has acknowledged that "while an indictment parroting the language of a federal criminal statute is often sufficient, there are crimes that must be charged with greater specificity [such as] the statute making it a crime for a witness summoned before a congressional committee to refuse to answer any question 'pertinent to the question under inquiry.' 2 U.S.C. § 192." *United States v. Resendiz-Ponce*, 549 U.S. 102, 109 (2007).

The three elements of 18 U.S.C. 2250(a) are:

> (1) that the defendant is required to register under SORNA; (2) that the defendant *either* is a sex offender for purposes of SORNA by reason of a conviction under federal law, the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States, *or* traveled in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; *and* (3) that the defendant knowingly failed to register or update a registration as required by SORNA.

*United States v. Dean*, 606 F. Supp. 2d 1335, 1337-38 (M.D. Ala. 2009) (emphasis in original). Defendant argues that the instant indictment is deficient both because it fails to identify the conviction that qualifies him as a sex offender under SORNA and because there is no indication in the indictment that proof of a qualifying conviction was presented to the grand jury.

The Government contends that the indictment need not "go into detail on why Mr. Jackson is subject to SORNA because there is only one factual basis for this charge, namely Mr. Jackson's prior convictions for indecent exposure in California." Govt.'s Opp'n 3. It argues that requiring the indictment to identify the qualifying conviction would amount to "asking the Court to bestow upon the grand jury the task of interpreting the law to decide the issue," and therefore would "usurp the age-old separation of finders of fact from deciders of law." *Id.* at 3-4. Finally, the Government asserts that any error in the language of the indictment was harmless. It provides excerpts of the grand jury testimony of United States Marshal Christopher Hulse to show that the grand jury "was properly told of the requirement that Mr. Jackson register under SORNA because of his 2001 felony conviction for indecent exposure with priors" and therefore that it "was aware of all facts necessary to establish the elements of the offense." *Id.* at 4.

In his reply brief, Defendant contends that the Government misunderstands the role of the grand jury and that its opposition "raises the strong likelihood that the grand jury was not

4

properly instructed in this case." Def.'s Reply 2.

> [I]t is the grand jury's role to decide whether there is probable cause to believe that Mr. Jackson has been convicted of a "sex offense" which brings him within the reach of SORNA. Because the government has not provided the legal instructions that were given to the jury, and because the government believes that no such finding by the grand jury is necessary, it appears that the grand jury was not advised of the definition of "sex offense" under SORNA, or asked to determine whether Mr. Jackson met the definition of "sex offender" under SORNA.

*Id.* (footnote omitted). Defendant also argues that the indictment must include details with respect to why he was subject to SORNA registration requirements, not because it provides him with notice of the charge but because it answers the question of "whether the grand jury made a finding regarding one of the elements of the offense, or was simply told by the government that Mr. Jackson is required to register under SORNA." *Id.* at 4. He asserts that the answer to this question is crucial because it "is not merely a 'legal question,' but an application of a statutory term to the facts of the case, which is part of the function of both grand and petit jurors." *Id.* at 4-5.

Defendant relies upon *United States v. Crawford*, No. CR-08-019-RAW, 2008 WL 895934 (E.D. Okla. 2008). That case also involved a challenge to the sufficiency of an indictment for violation of 18 U.S.C. § 2250. The indictment, which the prosecutor conceded was "bare bones," read in its entirety as follows:

> During the period of on or about December 1, 2006 to on or about January 9, 2008, in the Eastern District of Oklahoma and elsewhere, the Defendant, ROBERT EDWARD CRAWFORD, an individual required to register under the Sex Offender Registration and Notification Act, traveled in interstate commerce and did knowingly fail to register and update registration as required by the Sex Offender Registration and Notification Act in violation of Title 18, United States Code, Section 2250.

*Crawford*, 2008 WL 895934 at *1. The court dismissed the indictment as insufficient where, despite the parties' agreement that "there are multiple instances of conduct within the alleged time frame which a trial jury might be persuaded were violative of the statute," the indictment charged a single offense and failed to set forth any specific conduct on specific dates within the broad time frame stated. *Id.* The court concluded that "[u]nder this 'minimalist' indictment, and

5

in the context of the SORNA statutory scheme, [there exists] great risk that the grand jury may have had a concept of the offenses essentially different from that which will be relied upon by the government before the trial jury." *Id.* (citation omitted).  The Government contends that *Crawford* is factually distinguishable because "(1) Mr. Jackson is alleged to have only performed one act of traveling in interstate commerce; and (2) the grand jury transcript clearly shows that it was fully apprised of Mr. Jackson's prior conviction and registration requirement."  Govt.'s Opp'n 3 n.1.

The Court agrees that *Crawford* is distinguishable.  The risk described in that case is not present here.  As the excerpts of the grand jury transcript demonstrate, it does not appear that the grand jury's "concept of the offense[]" is "essentially different from that which will be relied upon by the government before the trial jury."  The Government's theory, which it presented to the grand jury, is that Defendant's duty to register under SORNA arose solely from his conviction under Cal. Pen. Code § 314.1.  Accordingly, the indictment is sufficient.

**B.     Whether SORNA Applies to Indecent Exposure Convictions**

Defendant contends that the indictment must be dismissed because he is not a sex offender as defined by SORNA and thus was not required to register under the statute.   SORNA provides that "[a] sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student."  42 U.S.C. § 16911(1).  Under the statute, "sex offender" is defined as "an individual who was convicted of a sex offense."  42 U.S.C. § 16911(1).  Although the term "sex offense" has several definitions, the parties agree that the only definition potentially applicable here is:

> (i) a criminal offense that has an element involving a sexual act or sexual contact with another;

42 U.S.C. 16911(5)(A)(i).

The parties agree that whether Defendant is a sex offender under SORNA depends on whether Cal. Pen. Code § 314 "has an element involving a sexual act or sexual contact with

another." Cal. Pen. Code § 314 provides, in relevant part, that:

> Every person who willfully and lewdly, either:
>
> > 1. Exposes his person, or the private parts thereof, in any public place, or in any place where there are present other persons to be offended or annoyed thereby; or,
> >
> > 2. Procures, counsels, or assists any person so to expose himself or take part in any model artist exhibition, or to make any other exhibition of himself to public view, or the view of any number of persons, such as is offensive to decency, or is adapted to excite to vicious or lewd thoughts or acts, is guilty of a misdemeanor.
>
> Every person who violates subdivision 1 of this section after having entered, without consent, an inhabited dwelling house, or trailer coach as defined in Section 635 of the Vehicle Code, or the inhabited portion of any other building, is punishable by imprisonment in the state prison, or in the county jail not exceeding one year.
>
> Upon the second and each subsequent conviction under subdivision 1 of this section, or upon a first conviction under subdivision 1 of this section after a previous conviction under Section 288, every person so convicted is guilty of a felony, and is punishable by imprisonment in state prison.

Cal. Penal Code § 314. The question of whether this statute meets the definition of "sex offense" in 42 U.S.C. § 16911(5)(A)(i) is one of first impression.

The parties' dispute centers around whether "with another" modifies both "sexual act" and "sexual contact," or only pertains to the latter. Defendant argues that "with another" necessarily modifies both "sexual act" and "sexual contact," and that, because § 314 does not contain an element involving either a sexual act with another or sexual contact with another, it does not satisfy SORNA's definition of sex offense. He contends that his interpretation is supported by a plain reading of the statute:

> "Sexual act" and "sexual contact" are two forms of behavior listed in a series separated by the disjunctive "or" and are not separated by a comma, followed at the end of the series by the qualifying adverbial phrase "with another." As a matter of ordinary English usage, the adverbial phrase is read to modify each of the preceding terms.

Def.'s Reply 8-9.

Defendant relies on two state court decisions, each more than thirty years old. In *Application of Graham*, 239 Mo.App. 1036 (Missouri Ct. App. 1947), *superseded by statute on*

1   *other grounds*, three parents appealed the adoption of their children by another couple.  The

2   appellate court interpreted the following statutory language relating to exceptions to the

3   requirement of biological parental consent in adoption actions: "If [the biological mother or

4   father] has wilfully abandoned the child or neglected to provide proper care and maintenance for

5   the two years last preceding such date."  *Graham*, 239 Mo.App. at 1044.  The court held that the

6   two-year requirement applied to both abandonment and neglect:

7           [F]rom a grammatical point of view, the word "or" preceding the word "neglect"
            is a disjunctive conjunction connecting two coordinate clauses of equal
8           grammatical value.  The general rule is that when a conjunction connects two
            coordinate clauses or phrases, a comma should precede the conjunction if it is
9           intended to prevent following qualifying phrases from modifying the clause which
            precedes the conjunction.  Jones Practical English Composition, 3d Ed. 1941, p.
10          66.  The part of the statute contains no punctuation next preceding the word "or,"
            nor thereafter, which would prevent the time provision from applying equally to
11          both "abandon" and "neglect."

12  *Id.* at 1046-47.

13          In *North Carolina v. Thomas*, 292 N.C. 251 (N.C. 1977), the defendant appealed his

14  conviction for safecracking and felonious larceny.  The safecracking statute under which the

15  defendant had been convicted prohibited "the unlawful and forcible opening, attempt to open, or

16  picking of a safe or vault by the use of 'explosives, drills, or tools.'"  *Thomas*, 292 N.C. at 253.

17  The question before the North Carolina Supreme Court was whether the defendant's conviction

18  could stand where "there [wa]s no evidence, nor d[id] the indictment charge, that defendant used

19  or attempted to use 'explosives, drills, or tools' or otherwise forced open the safe."  *Id.*  The court

20  found that it could not: "These three methods are described in an adverbial clause which clearly

21  modifies each element of the compound predicate.  Thus, each method of opening a safe must be

22  by means of 'explosives, drills, or tools' in order to fall within the prohibition of the statute."  *Id.*

23  at 253-54.  The court also indicated that if its interpretation of legislative intent proved to be

24  wrong "and it was indeed intended that G.S. 14-89.1 embrace the unlawful entry into or attempt

25  to open a safe or vault by any manipulation of the combination, it will be a simple matter for the

26  General Assembly to amend the section."  *Id.* at 255.

27          Defendant also contends that if "with another" modified "sexual contact" but not "sexual

28                                                      8

act," the phrase "would be somewhat redundant . . . because the word 'contact' necessarily implies the involvement of another." Def.'s Reply 10.  He points out that the dictionary definition of "contact" is "a union or junction of surfaces." *Id.* (citing Merriam-Webster's Collegiate Dictionary (10th ed.)).

The Government argues that "with another" modifies only "sexual contact," and that Congress would have written the statute differently if it intended the statute to be consistent with Defendant's construction.  "For example, Congress could have said 'sexual act or contact with another' which would have meant that either the act or the contact be with another."  Govt.'s Opp'n 5.  The Government also maintains that Defendant's construction would render the term "sexual contact" superfluous: "If both 'sexual act' and 'sexual contact' must be 'with another' as Defendant claims, then there will be no difference between the two phrases because all sexual contact is inherently an act and will therefore always be encompassed within 'sexual act.'"  *Id.*

The Government also points to other indicators of Congressional intent that support its construction.  First, it argues that because the title of the section of the statute defining "sex offense" is "expansion of sex offense definition," "the court should not seek to limit the offenses [covered by the definition] only to acts that require the intimate involvement of the victim." *Id.* Second, it argues that under Defendant's construction "the registration requirement would not include many state crimes against minors such as those involving the distribution or printing of child pornography," which would conflict with Congress's inclusion of distribution of child pornography as a predicate crime under SORNA.  *Id.* at 5-6.  Finally, the Government cites SORNA's legislative history.  Specifically, it points to a comment by then-Senator Biden concerning the inclusion of "the 'use of the Internet to facilitate or commit a crime against a minor' as an offense that could trigger registration," 152 Cong. Rec. S8012, 14 (daily ed. July 20, 2006), and President's Bush emphasis on the dangers of sexual predators on the Internet in his remarks at the signing of SORNA.

Defendant argues that "the fact that Congress intended SORNA to apply to Internet crimes does not mean that Congress intended the language 'sexual act or sexual contact with

9

1   another' to be interpreted broadly, because Congress provided elsewhere for inclusion of Internet

2   crimes." Def.'s Reply 8.  Specifically, 42 U.S.C. § 16911(5)(iii) provides the following

3   alternative definition of "sex offense":

> (iii) a Federal offense (including an offense prosecuted under section 1152 or
> 1153 of Title 18) under section 1591, or chapter 109A, 110 (other than section
> 2257, 2257A, or 2258), or 117, of Title 18.

6    42 U.S.C. § 16911(5)(iii).  Defendant contends that because this definition includes crimes such

7   as child pornography and the use of interstate commerce to entice a minor to engage in sexual

8   activity (including child pornography, *see* 18 U.S.C. § 2427), "there is no need to resort to the

9   'sexual act' language as a basis for including Internet crimes within SORNA." Def.'s Reply 8.

10      Defendant also argues that aside from the references to the Internet and child

11   pornography, nothing in the statute or legislative history "would evince any intent to include any

12   form of private sexual behavior within the reach of this subsection." *Id.* at 11.  He asserts that

13   the Government's definition would encompass "loosely worded misdemeanor and infraction

14   statutes like California's that prohibit broad ranges of relatively minor sexually-related conduct

15   such as 'indecent exposure,' 'disorderly conduct,' 'public indecency,' and 'loitering for purposes

16   of prostitution.'" *Id.*

17      Defendant also relies upon the Ninth Circuit's recent decision in *Nunez v. Holder*, 594

18   F.3d 1124 (9th Cir. 2010).  In *Nunez*, the court held that while the statute "criminalizes a range of

19   conduct that offends the sensibilities of many, and perhaps most, people," it does not

20   "categorically meet the federal standard for moral turpitude" for the purposes of deportation

21   proceedings. *Nunez*, 594 F.3d at 1133.  However, as the Government observes, "*Nunez* has no

22   implication to [sic] Jackson's defense because SORNA requires registration for those convicted

23   of *sexual acts* and not for those convicted for [sic] crimes of moral turpitude." Govt.'s Resp. 2

24   (emphasis in original).

25      Defendant further claims that the Government's construction would include convictions

26   under Cal. Pen. Code § 314, but not convictions under Cal. Pen. Code § 647, an alternative

27   charge that does not require registration under California law.  Indeed, § 647 prohibits a variety

28                                          10

of conduct under the rubric of "disorderly conduct" including "engag[ing] in lewd or dissolute conduct in any public place or in any place open to the public or exposed to public view." Cal. Penal Code § 647(a). However, as the Government argues, the two statutes are distinct from one another because § 647 prohibits acts "that are clearly not sexual in nature" such as trespassing and public intoxication and therefore would not constitute "sexual acts" under SORNA, while § 314 requires that the defendant act "lewdly." Govt.'s Resp. 2.

Finally, Defendant urges the Court to adopt the definitions of "sexual act" and "sexual contact" contained in Chapter 109A of the United States Code to aid in interpretation of SORNA, which is contained in Chapter 109B and does not contain a definitional section. Chapter 109A, entitled, "Sexual Abuse," defines the terms as follows:

(2) the term "sexual act" means--

(A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however, slight;

(B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

(C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or

(D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person;

(3) the term "sexual contact" means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

18 U.S.C. § 2246(2)-(3). Defendant asserts that "the Ninth Circuit has already adopted the definitions set forth in Chapter 109A, including section 2246, as the touchstone for analyzing other criminal statutes, both state and federal, involving sexual conduct." Def.'s Supp. Filing 3. Defendant also argues that Cal. Penal Code § 314 does not contain an element of either sexual act or sexual contact that meets these definitions.

11

The Government contends that the definitions contained in Chapter 109A should not be applied to SORNA because

> SORNA is structured in a way that does not even allow for chapter 109A to have any impact on the defintion of "sexual act" under SORNA: The "Amie Zyla expansion of sex offense definition," § 16911(5)(A), which defines "sex offense" for the purposes of SORNA's registration requirement, lists "sexual act[s]" separately from its inclusion of chapter 109a sexual abuse violations as sex offenses. Thus, the authors of SORNA intended the term "sexual act" to be more encompassing than sexual abuse under chapter 109A or any other listed Federal offenses such as sex trafficking, child pornography, and sexual exploitation of children.

Govt.'s Resp. 2-3.

"In interpreting the statute we look to general principles of statutory construction and begin with the language of the statute itself." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). One such principle is the "grammatical 'rule of the last antecedent,' according to which a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003); *see also* 2A N. Singer, Sutherland on Statutory Construction § 47.33, p. 369 (6th rev. ed. 2000) ("Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent.")). The rule's corollary provides that "where there is a comma before a modifying phrase, that phrase modifies all of the items in a series and not just the immediately preceding item." *Stepnowski v. C.I.R*, 456 F.3d 320, 324 (6th Cir. 2006) (citation omitted). As the *Stepnowski* court explained:

> Under the last-antecedent rule of construction, therefore, the series "A or B with respect to C" contains two items: (1) "A" and (2) "B with respect to C." On the other hand, under the rule of grammar the series "A or B, with respect to C" contains these two items: (1) "A with respect to C" and (2) "B with respect to C." [citation omitted]
> Compare the Fifth Amendment of the Constitution, which provides that no person shall "be deprived of life, liberty, or property, without due process of law." The comma before the phrase "without due process of law" indicates that the phrase modifies "life," "liberty," and "property." This obviously follows the grammatical rule.

*Id.* at 324 n.7.

In *Barnhart*, the statute at issue provided that:

12

> "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." [42 U.S.C.] § 423(d)(2)(A).

*Id.* at 23.  The Supreme Court, applying the rule of the last antecedent, held that the Third Circuit had erred in concluding that "the specifically enumerated 'previous work' 'must' be treated the same as the more general reference to 'any other kind of substantial gainful work.'" *Id.* at 27 (citation omitted).  Accordingly, the Court held that the phrase "which exists in the national economy" modified the last antecedent phrase, "any other kind of substantial gainful work," but not the phrase "previous work."

Like all canons of statutory construction, the rule of the last antecedent is not a mandatory one.  *Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001).  Rather, it is a "guide[] 'designed to help judges determine the Legislature's intent.'"  *Xilinx, Inc. v. C.I.R.*, 598 F.3d 1191, 1196 (9th Cir. 2010) (quoting *Chickasaw Nation*, 534 U.S. at 94).  As such, the rule "is not an absolute and can assuredly be overcome by other indicia of meaning."  *Barnhart*, 540 U.S. at 26; *see also Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 833 (9th Cir. 1996) ("[W]e are not inflexible in our application of the doctrine of last antecedent, and have recognized that the principle must yield to the most logical meaning of a statute that emerges from its plain language and legislative history.").  For example, in *United States v. Hayes*, 129 S.Ct. 1079 (2009), the Supreme Court declined to apply the rule in interpreting the meaning of "misdemeanor crime of domestic violence" as it appears in 18 U.S.C. § 922(g)(9), which prohibits possession of a firearm by any person convicted of such an offense: "Applying the rule of the last antecedent here would require us to accept two unlikely premises: that Congress employed the singular 'element' to encompass two distinct concepts, and that it adopted the awkward construction 'commi[t]' a 'use.'"  *Hayes*, 129 S.Ct. at 1086.  The Supreme Court also held that applying the rule would render other statutory language superfluous.  *Id.* at 1087.  Here, applying the rule of last antecedent, the limiting clause or phrase "with another" modifies only the immediately preceding noun phrase, "sexual contact," and not the more remote "sexual act."  The Court

13

therefore must determine whether either the plain language or legislative history demonstrates that Defendant's construction is more logical.

With respect to the plain language of the statute, *Application of Graham* and *Thomas* are unpersuasive in light of the overwhelming weight of Ninth Circuit and Supreme Court case law adopting and applying the rule of the last antecedent and its corollary.   To the extent that the relevant grammatical rules can be reconciled, the Court notes that the cases cited by Defendant involved *adverbial* phrases modifying compound predicates (verbs) while the language at issue here involves an *adjectival* phrase ("with another") modifying the object ("sexual contact," a noun) of the participial phrase that begins with "involving."[2]   To the extent that the rules conflict, the majority of federal courts have decided against Defendants' construction.  Moreover, the Court agrees with the Government that reading the statute as Defendant proposes would render the term "sexual contact" redundant, thus violating the "cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant."  *City of Los Angeles v. U.S. Dep't of Commerce*, 307 F.3d 859, 870 (9th Cir. 2002) (citation and internal quotation marks omitted).

With respect to legislative history, the Court finds nothing in the record that suggests Congressional intent to limit the registration requirement to those convicted of crimes involving physical contact with another person.  Moreover, Defendant's argument that Congress could not have intended to include non-contact or "private" sexual crimes in the definition of sex offense contained in 42 U.S.C. § 16911(5)(A)(i) because of the inclusion of those crimes in Section 16911(5)(A)(iii) is only partially accurate.  Section 16911(5)(A)(iii) explicitly lists only *federal offenses*.  Accordingly, under Defendant's construction, non-contact or private *state offenses* involving the same conduct as some of the federal offenses listed in Section 16911(5)(A)(iii)

---

[2]The Court acknowledges that the Seventh Circuit relied upon *Application of Graham* to interpret an insurance contract in *Amer. Nat. Fire Ins. Co. v. Rose Acre Farms, Inc.*, 107 F.3d 451, 455-56 (7th Cir. 1997).

14

1  would not subject an offender to SORNA's registration requirements.  Given the clear

2  Congressional purpose of targeting offenses such as the distribution of child pornography, the

3  Court concludes that Congress did not intend this result.

4      **C.    Whether SORNA Is Void for Vagueness**

5      As the Supreme Court recently held, the void-for-vagueness doctrine requires that  "[t]o

6  satisfy due process, 'a penal statute [must] define the criminal offense [1] with sufficient

7  definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner

8  that does not encourage arbitrary and discriminatory enforcement.'"  *Skilling v. United States*,

9  130 S.Ct. 2896, 2904 (2010) (citing *Kolender v. Lawson*, 461 U. S. 352, 357 (1983)).  In

10  applying the doctrine, federal courts "must, if possible, construe, not condemn, Congress'

11  enactments."  *Id.* (citation omitted).

12      Defendant contends that the indictment should be dismissed even if the Court accepts the

13  Government's construction of 42 U.S.C. 16911(5)(A)(i) because "the statute should be found

14  void for vagueness and the rule of lenity must preclude its application here."  Def.'s Mot. 12.

15  However, this argument presumes that the statute is ambiguous.  For the reasons discussed

16  above, the Court concludes that the plain meaning of "sex offense" includes Defendant's

17  conviction for indecent exposure under Cal. Pen. Code § 314.  Accordingly, the void-for-

18  vagueness doctrine and its corollary, the rule of lenity, do not apply.  *United States v. Wyatt*, 408

19  F.3d 1257, 1262 (9th Cir. 2005) (citing *United States v. Phillips*, 367 F.3d 846, 857 n.39 (9th Cir.

20  2004)) ("Under the rule of lenity, *when a criminal statute is ambiguous*, we interpret the statute

21  in favor of the defendant. However, it applies only when there is grievous ambiguity or

22  uncertainty in the statute and when, after seizing everything from which aid can be derived, we

23  can make no more than a guess as to what Congress intended." (internal alterations, citations, and

24  quotation marks omitted)) (emphasis added).

25      **D.    Whether SORNA Is Impermissibly Overbroad**

26      Defendant next argues that the indictment should be dismissed because "[t]he

27  government's application of SORNA in this case raises serious concerns regarding overbreadth."

28                                              15

Def.'s Reply 14.  Defendants' argument is based on the fact that the conduct that served as the basis for his state felony conviction "can only be prosecuted as a felony pursuant to a recidivist sentencing scheme."  *Id.*  He also contends that "even if the Court determines that indecent exposure is somehow encompassed within SORNA as a matter of statutory interpretation, the Court still should dismiss the indictment . . . because the statute would be impermissibly overbroad if applied to nuisance misdemeanors involving less serious forms of sexual behavior."  Def.'s Reply 15.

"[T]he overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep.'"  *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999) (plurality) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 612-15 (1973)).  However, "outside the limited First Amendment context, a criminal statute may not be attacked as overbroad."  *Schall v. Martin*, 467 U.S. 253, 268 n.18 (1984).  Defendant does not assert that the conduct that served as the basis of his indecent exposure convictions or the conduct prohibited by "nuisance misdemeanors involving less serious forms of sexual behavior" is protected by the First Amendment.  Nor does Defendant cite any authority for disregarding the general limitation on overbreadth challenges.

### E.   Whether the Interim Rule Making SORNA Retroactive Was Issued in Violation of the Administrative Procedures Act

On February 28, 2007, pursuant to the authority given to him under 42 U.S.C. § 16913(d), the Attorney General issued an interim rule making SORNA retroactive to all sex offenders convicted prior to July 27, 2006, the day of the statute's enactment.  *See* 28 C.F.R. § 72.3 (2007). The rule was made effective immediately and was issued without a pre-promulgation comment or notice period, although the Attorney General stated that he would accept comments on the rule through April 30, 2007.  72 Fed. Reg. at 8895-97 (2007).  On July 2, 2008, the Attorney General published final guidelines for interpreting and implementing SORNA.  *See* 73 Fed. Reg. 38030 (2008).

Case No. CR-09-1115 JF
ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT
(JFLC3)

1    Generally, under the Administrative Procedures Act ("APA"), 5 U.S.C. § 500 et seq., an

2    agency must follow specific procedures before issuing a rule.  "These procedures include:  (1)

3    publication of notice of the proposed rule in the Federal Register, 5 U.S.C. § 553(b); (2) a period

4    for interested individuals to comment on the proposed rule, *id.* § 553(c); and (3) publication of

5    the adopted rule not less than thirty days before its effective date, *id.* § 553(d)."  *Mora-Meraz v.*

6    *Thomas*, 601 F.3d 933, 939 (9th Cir. 2010).  However, the agency is relieved of these obligations

7    "when the agency for good cause finds (and incorporates the finding and a brief statement of

8    reasons therefor in the rules issued) that notice and public procedure thereon are impracticable,

9    unnecessary, or contrary to the public interest."  5 U.S.C. § 553(b)(3)(B).  In issuing the interim

10   rule on the retroactivity of SORNA, the Attorney General invoked the public interest exception:

> The immediate effectiveness of this rule is necessary to eliminate any possible
> uncertainty about the applicability of the Act's requirements—and related means
> of enforcement, including criminal liability under 18 U.S.C. 2250 for sex
> offenders who knowingly fail to register as required—to sex offenders whose
> predicate convictions predate the enactment of SORNA.  Delay in the
> implementation of this rule would impede the effective registration of such sex
> offenders and would impair immediate efforts to protect the public from sex
> offenders who fail to register through prosecution and the imposition of criminal
> sanctions.  The resulting practical dangers include the commission of additional
> sexual assaults and child sexual abuse or exploitation offenses by sex offenders
> that could have been prevented had local authorities and the community been
> aware of their presence, in addition to greater difficulty in apprehending
> perpetrators who have not been registered and tracked as provided by SORNA.
> This would thwart the legislative objective of "protect[ing] the public from sex
> offenders and offenders against children" by establishing "a comprehensive
> national system for the registration of those offenders," SORNA § 102, because a
> substantial class of sex offenders could evade the Act's registration requirements
> and enforcement mechanisms during the pendency of a proposed rule and delay in
> the effectiveness of a final rule.
>
> It would accordingly be contrary to the public interest to adopt this rule with the
> prior notice and comment period normally required under 5 U.S.C. 553(b) or with
> the delayed effective date normally required under 5 U.S.C. 553(d).

23   72 Fed. Reg. at 8896-97.

24   Defendant argues that the interim rule was issued in violation of the APA's pre-

25   promulgation notice and publication requirements and that, because his interstate travel occurred

26   before the promulgation of the final guidelines, the statute cannot be applied retroactively to him.

27   As the parties recognize, this is a question that has divided the circuits that have addressed it.

28                                          17

1   *See Carr v. United States*, 130 S.Ct. 2229, 2234 n.2 (acknowledging, but declining to resolve, the

2   split of authority).  The Sixth Circuit, in *United States v. Cain*, 583 F.3d 408 (6th Cir. 2009),

3   vacated the defendant's conviction under 18 U.S.C. § 2250 and remanded the case with

4   instructions to dismiss the indictment, holding that:

> Because SORNA explicitly required the Attorney General to specify the
> applicability of the Act to persons convicted prior to the effective date of SORNA,
> and because the Attorney General did not promulgate a regulation making that
> determination in compliance with the Administrative Procedure Act, Cain was not
> subject to SORNA's requirements during the period indicated in the indictment.

8   *Cain*, 583 F.3d at 409.  However, other courts, including the Fourth and Eleventh Circuits, have

9   reached the opposite conclusion.  *See United States v. Dean*, 604 F.3d 1275, 1282 (11th Cir.

10  2010) (rejecting *Cain*'s reasoning and holding that "[t]he Attorney General had good cause to

11  bypass the Administrative Procedure Act's notice and comment requirement"); *United States v.*

12  *Gould*, 568 F.3d 459, 470 (4th Cir. 2009), *cert. denied*, 130 S.Ct. 1686 (2010) ("In the

13  circumstances, we conclude that the Attorney General had good cause to invoke the exception to

14  providing the 30-day notice.").

15      The Government argues that the Court need not decide whether the interim rule was valid

16  under the APA because SORNA applies to Defendant even under *Cain*.  First, it points out that

17  the indictment in *Cain* alleged that the defendant failed to register, at the latest, on March 28,

18  2007, which was "less than thirty days after the interim regulation was promulgated and a month

19  before the close of the comment period." *Cain*, 583 F.3d at 420.  As a result, the Sixth Circuit

20  limited its holding, explicitly stating that it "t[ook] no position" on whether the interim regulation

21  would apply to a defendant "who failed to register during a period more than thirty days after

22  publication of the regulation." *Id.* at 424 n.7.  The Government contends that "if *Cain* is to be

23  followed, the court should still apply the interim regulation to Mr. Jackson because his

24  indictment encompasses a period *beginning in June 2008*, more than a year after the publication

25  of the interim rule." Govt.'s Opp'n 12 (emphasis in original).  Defendant argues in response that

26  "if the rule was invalid when issued, as the Sixth Circuit found in Cain, then it remained valid a

27  year later." Def.'s Reply 17.

28                                                18

1    The Government's argument is unpersuasive for two reasons.  First, the Sixth Circuit

2  subsequently extended the logic of *Cain* to situations in which the dates alleged in the indictment

3  fall outside of the thirty-day publication period.  *United States v. Utesch*, 596 F.3d 302, 309-10

4  (6th Cir. 2010); *see also Dean*, 604 F.3d at 1280 (recognizing the Sixth Circuit's extension of

5  *Cain*).  Second, as the court explained in *Utesch*, the fact that the thirty-day publication period

6  has passed does not provide any "indication that the notice-and-comment process was actually

7  carried out."  596 F.3d at 310.  Accordingly, if the Court were to follow the reasoning of the

8  Sixth Circuit and reject the Attorney General's justifications for non-compliance with the APA,

9  the interim rule is invalid and SORNA did not become effective until August 1, 2008, thirty days

10  after the final guidelines were issued.

11    However, the Court may deny Defendant's motion even without deciding whether the

12  interim rule was valid.  As the Government points out, "the vast majority of the time period

13  alleged in [the instant] indictment is after August 1, 2008, the date in [sic] which the final

14  regulations regarding the retroactive application of the statute came into effect."  Govt.'s Opp'n

15  12.  The Government contends that "[s]ince the indictment alleges that Defendant's acts occurred

16  between June 2008 and November 2009, [it] may still prove . . . that Mr. Jackson was subject to

17  the registrations provisions of SORNA and hence is criminally liable for his failure to register as

18  a sex offender."  *Id.* at 12-13.  The Government relies upon *United States v. Coleman*, No.

19  09-30-ART, 2009 WL 4255545 (E.D. Ky. Nov. 24, 2009), for support.  In that case, the

20  indictment for violation of Section 2250 alleged that the defendant's actions occurred "[b]etween

21  on or about a date in April, 2007, the exact date unknown, and April 28, 2009."  *Coleman*, 2009

22  WL 4255545, at *1.  The court concluded that even though the interim rule could not be applied

23  to the defendant in light of *Cain*, the final guidelines "clearly" could be.  *Id.* at *4.

24    Defendant asserts that the time frame alleged in the indictment is insufficient to save it.

25  He contends that, "[d]rawing reasonable inferences from the facts, it appears more likely than not

26  that Mr. Jackson traveled prior to August 1, 2008" and therefore the indictment must be

27  dismissed "[b]ecause the government cannot meet a probable cause standard to show that the

28                                                    19

1   travel happened after the date on which the statute became retroactive." Def.'s Reply 17 & n.8.

2   He also argues that *Coleman* is distinguishable because the Government in that case "had

3   definitive proof of travel after the promulgation of the final rule." *Id.* at 18 (citing *Coleman*,

4   2009 WL 4255545 at * 2 n.1).

5        In ruling on a pretrial motion to dismiss, courts "must presume the truth of the allegations

6   in the charging instruments." *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996) (finding

7   that the district court "erred in considering documentation provided by the defendants" in ruling

8   upon a motion to dismiss under Fed. R. Crim. P. 12(b)(2)).  Considering only the face of the

9   indictment,  it is possible that Defendant committed the proscribed acts after August 1, 2008, the

10  date of the adoption of the final regulations on retroactivity.  Under these circumstances,

11  dismissal of the indictment would be inappropriate, and the Court need not resolve the split in the

12  circuit courts as to whether the interim rule was issued in accordance with the APA.[3]  Should the

13  facts adduced at trial demonstrate that Defendant committed the acts alleged in the indictment

14  after the issuance of the interim rule but before promulgation of the final guidelines, the Court

15  will decide the legal issue at that time.

16        **F.    Whether SORNA Violates the Commerce Clause**

17        In *United States v. George*, 579 F.3d 962 (9th Cir. 2009), the Ninth Circuit held that

18  "Congress had the power under its broad commerce clause authority to enact the SORNA."

19  *George*, 579 F.3d at 966.  Defendant raises the issue here to preserve it for further review.[4]  It is

20  so preserved.

21  *//*

22

23  _____

24  [3]Given the frequency with which SORNA violations are being litigated it is not
    inconceivable that the Ninth Circuit will weigh in on this issue before trial.

25  [4]Defendant also submits, almost in passing, that SORNA "should be found to exceed
26  Congress' authority under the Commerce Clause *as applied in this case*."  Def.'s Mot. 16
    (emphasis added); *see also* Def.'s Reply 18.  However, Defendant has pointed to no authority for
27  his "as applied" challenge.

28                                    20

1

## III. CONCLUSION

2        Good cause therefor appearing, Defendant's motion to dismiss the indictment is denied.

3

4  IT IS SO ORDERED.

5

6  DATED: August 23, 2010

7                                 JEREMY FOGEL
8                                 United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. CR-09-1115 JF
ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT
(JFLC3)